# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR A. LOEWY and VIRIDIANA LOEWY,<br><br>                           Plaintiffs,<br>vs.<br>CMG MORTGAGE, INC., et al.,<br>                           Defendants. | CASE NO. 17cv341-LAB (KSC)<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. 32];**<br><br>**ORDER REMANDING CASE** |

Currently before the Court is Defendant CMG Mortgage, Inc.'s motion for summary judgment. Dkt. 32. That motion is **GRANTED** as to Plaintiffs' federal claims. The state claims are **REMANDED** to San Diego County Superior Court.

## BACKGROUND

In August 2013, Plaintiffs Arthur and Viridiana Loewy obtained a secured residential mortgage loan that was serviced by Defendant CMG Mortgage, Inc. *See* Loewy Decl., Dkt. 33-1, at ¶¶ 3, 5. The Loewys missed several mortgage payments over the following years, although the parties disagree about the number of payments missed and the total arrearages owed. *See id.* at ¶ 4; Kelbaugh Decl., Dkt. 32-2, at ¶ 5. In early 2015, the Loewys first applied to CMG for a mortgage modification. *See* Kelbaugh Decl. at ¶ 6. Around this same time, the Loewys also applied to Keep Your Home California

- 1 -

("KYHC"), a state program designed to assist delinquent homeowners at risk of foreclosure. *See* Loewy Decl. at ¶¶ 8-10. In July 2015, KYHC approved the Loewys' application for mortgage assistance and sent $100,000 to CMG to be applied to the Loewys' loan. *Id.* at ¶ 12.

CMG informed the Loewys that, under the KYHC guidelines, the use of these funds was contingent on the parties entering into a loan recast or modification agreement, and that the funds must first be applied to arrearages, with the balance going to principal. *See* Kelbaugh Decl. at ¶ 8. Over the next year, the parties went back and forth regarding various potential modifications. One of the key problems, at least according to CMG, was that the Loewys' loan was federally insured by the Federal Housing Administration ("FHA"). *See id.* at ¶¶ 12-13. The requirements imposed by KYHC (on how the funds must be applied) combined with the requirements of the FHA (on the terms of any recast or modification) made it unusually difficult to come up with a modification that was palatable to all parties involved. *Id.* For example, CMG notified the Loewys on August 12, 2016 that they were ineligible for an FHA standard modification because "[their] income is insufficient to qualify for any foreclosure alternative programs," and that they did not qualify for an FHA home affordable modification because their "housing expense to income ratio . . . does not meet the requirement for a loan modification." *See id.* at Ex. 9. Further complicating matters, the Loewys objected to the way CMG sought to apply the KYHC funds. Arguing that it was bound by the KYHC guidelines, CMG conditionally applied the $100,000 first to arrearages owed, with the balance (roughly $70,000) going to principal. *See id.* at ¶ 9. The Loewys argued that *all* the KYHC funds should go to principal reduction, or, at a minimum, that CMG was misrepresenting the arrearages actually owed. *See id.* at ¶¶ 10-12. And if all that wasn't enough, the Loewys went into Chapter 7 bankruptcy in August 2016, which hampered CMG's ability to modify the loan for the duration of the bankruptcy proceedings. *See id.* at ¶ 15.

In an attempt to streamline matters, CMG purchased the Loewys' FHA loan from its original owner, Ginnie Mae, in October 2016, purportedly so that it could offer the

Loewys additional recast/modification options not available under the FHA regulations. *See id.* at ¶ 17. But the parties were still unable to reach a mutually acceptable agreement as to how the loan should be modified and how the KYHC funds should be applied. Once the deadline for applying the KYHC funds passed in late 2016 and the parties were still unable to reach an agreement, CMG returned the money to KYHC. The KYHC program is now closed and the Loewys claim they are ineligible to receive any further funds. *See* Loewy Decl. at ¶ 37. The Loewys have made no further mortgage payments, but CMG has not foreclosed on the property. *See* Kelbaugh Decl. at ¶ 21.

The Loewys brought this suit in San Diego Superior Court in January 2017, alleging four causes of action against CMG: (1) violation of the federal Real Estate Settlement Procedures Act ("RESPA"), (2) violation of the federal Truth in Lending Act ("TILA"), (3) negligence, and (4) violation of California's Rosenthal Act. *See* Complaint, Dkt. 1-2. CMG timely removed the case to this Court.

**ANALYSIS**

CMG moves for summary judgment on each of the Loewys' four causes of action. For the reasons below, that motion is granted as to the two federal claims, but the Court declines to exercise supplemental jurisdiction over Plaintiffs' state claims and therefore does not reach the merits of those claims.

**1. RESPA**

Plaintiffs allege that CMG violated RESPA by failing to provide loan servicing information in response to two qualified written requests ("QWR") that they sent to CMG. Because CMG complied with RESPA's requirements in responding to Plaintiffs' QWRs, summary judgment is warranted.

RESPA requires loan servicers like CMG to respond to certain correspondence (i.e., QWRs) from borrowers. 12 U.S.C. § 2605(e)(1)(A), (e)(2). RESPA defines a "qualified written request" as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to

> identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* § 2605(e)(1)(B). Once "received," a loan servicer must respond to a QWR within 30 business days, but that period may be extended for an additional 15 days if the "servicer notifies the borrower of the extension and the reasons for the delay in responding." *Id.* § 2605(e)(2), (e)(4).

Although the Ninth Circuit hasn't weighed in on the issue, the two circuits that have—the Second and Tenth Circuits—each have held that a servicer's obligation to respond to a QWR isn't triggered unless the QWR is sent to the address the servicer has designated for receipt and handling of QWRs. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013) ("Failure to send the QWR to the designated address . . . does not trigger the servicer's duties under RESPA."); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 182 (2d Cir. 2014) ("[A] letter sent to a different address is not a QWR, even if an employee at that address (who may not have training in RESPA compliance) in fact responds to that letter."). These decisions were based on the language of RESPA's implementing regulations, now 12 CFR § 1024.36, which provides that "[a] servicer may, by written notice provided to a borrower, establish an address that a borrower must use to request information in accordance with the procedures in this section."

The Loewys sent CMG two documents they contend were valid QWRs that triggered CMG's duty to respond under RESPA. The first was an email sent to CMG on or about September 8 or 9, 2016, while the Loewys were in bankruptcy. *See* Joint Statement of Undisputed Fact ("SUF"), Dkt. 34, at ¶ I.1. The second was a letter sent to CMG on October 20, 2016. *See Id.* at ¶ I.2.

/ / /

/ / /

/ / /

/ / /

It's undisputed that the Loewys did not send the original email to CMG's designated QWR address,[1] so the Court finds that CMG had no legal obligation to respond to that request, even if it ultimately did so. As to the subsequent letter, the parties dispute whether it was correctly addressed (and therefore whether CMG had a duty to respond). Arthur Loewy attaches a purported copy of the letter to his declaration. *See* Loewy Decl., Ex. 9. That letter lists the recipient's address as "PO Box 77423, Ewing, NJ," which is the same address CMG designated for QWR inquiries. *Id.* Based on this, the Loewys argue that the second letter was a perfected QWR. CMG submits that the Loewys actually sent the letter to a PO Box located in Trenton, New Jersey, and that CMG never received the QWR at all. *See* SUF ¶ 2; Kelbaugh Decl. at ¶ 16. Indeed, the USPS tracking information provided by the Loewys suggests that the letter was delivered to Trenton, not Ewing, which supports CMG's argument that the QWR was unperfected. *See* Loewy Decl., Ex. 10.

But regardless of whether the QWRs were properly perfected, the undisputed evidence shows that CMG timely responded under RESPA, so summary judgment is warranted. The Loewys' original email was sent on September 8, 2016, meaning that CMG had at least until October 21, 2016—or 30 business days—to either respond to the QWR or request a 15-day extension. *See* 12 U.S.C. § 2605(e)(2) (a servicer must respond to a QWR within "30 days (excluding legal public holidays, Saturdays, and Sundays)"). CMG responded to the Loewys on October 13, 2016, advising that its research was "taking longer than anticipated" and that it would "respond within 15 additional business days from our originally expected response date." Kelbaugh Decl.,

---

[1] At all times relevant to the dispute, CMG's designated address for QWRs was PO Box 77423, Ewing, NJ 08628. *See* Kelbaugh Decl., Ex. 6 (an August 2, 2016 letter from CMG to the Loewys stating, among other things, "Qualified Written Requests, notifications of error, or requests for information concerning your loan must be directed to: PO Box 77423, Ewing, NJ 08628"); *id.,* Ex. 9 (an August 12, 2016 letter from CMG to the Loewys stating the same). The Loewys' email, by virtue of being a digital communication, was necessarily *not* sent to this designated mailing address.

Ex. 11. This request for an extension was proper under 12 U.S.C. § 2605(e)(4) and extended CMG's response period through November 14, 2016—or 15 business days from the date CMG's original response was due. CMG responded to the QWR in full on November 7, 2016.[2] *See* Kelbaugh Decl., Ex. 12. Because the email and letter QWRs were essentially identical, it is irrelevant that CMG did not specifically respond the second request. *See Hawkins-El v. First Am. Funding, LLC*, 891 F.Supp.2d 402, 409 (E.D.N.Y. 2012), *aff'd*, 529 Fed.Appx. 45 (2d Cir. 2013) (loan servicer is not required under RESPA to respond to multiple "letters rais[ing] essentially the same dispute described in [the] initial letter."). CMG thus responded properly under RESPA and is entitled to summary judgment.

Finally, even if CMG's actions did violate RESPA, summary judgment would still be warranted because the Loewys have not shown any damages causally linked to CMG's alleged delays in responding to the QWRs. The failure to provide evidence of actual damages resulting from an alleged violation is fatal to a RESPA claim. *Cf. Zhang v. Countrywide Home Loans, Inc.*, 601 Fed.Appx. 567, 567 (9th Cir. 2015) (affirming district court's dismissal of plaintiff's RESPA claim alleging inadequate responses to QWRs because plaintiff failed to allege facts sufficient to show she suffered actual damages as result of alleged violation); *Carswell v. JP Morgan Chase Bank N.A.*, 500 Fed.Appx. 580, 582 (9th Cir. 2012) (affirming district court's dismissal of plaintiff's RESPA claim for failure to allege any actual damage, "which is required as an element of a RESPA claim"). The Loewys' "actual damages" are the loss of $100,000 in funds from KYHC that CMG returned to the state of California after being unable to reach a mutually

---

[2] Plaintiffs argue that CMG sent its response to the Loewy's old address and that they therefore did not receive the documents for more than a month. The parties share equal blame here. At the end of the email QWR the Loewys sent to CMG—which appears to be a boilerplate form letter—the email states, "Please send these requested documents to: <<Your name and address here>>," apparently forgetting to fill in the actual address where they wanted the documents sent. *See* Kelbaugh Decl., Ex. 10. Although CMG may have chosen an inconvenient address to send the requested documents, Plaintiffs have not shown that this violated RESPA.

agreeable mortgage modification with the Loewys. While this might constitute actual damages related to Plaintiffs' negligence claim, it is wholly unrelated to any delay in responding to QWRs under RESPA. Plaintiffs have likewise failed to submit any evidence of a "pattern or practice of noncompliance [with RESPA]" that would entitle them to $2,000 in statutory damages. 12 U.S.C. § 2605(f)(1)(B); *see also Soriano v. Countrywide Home Loans, Inc.,* 2011 WL 1362077, at *7 (N.D. Cal. 2011) ("Because Plaintiff has failed to introduce evidence of anything other than a single failure to respond to a single QWR, Plaintiff cannot establish that [Defendant] engaged in a 'pattern or practice' of RESPA violations.").

Because CMG's actions were consistent with RESPA and because Plaintiffs have failed to demonstrate any damages causally linked to CMG's alleged RESPA violations, CMG's motion for summary judgment as to this claim is **GRANTED**.

### 2. TILA

The Loewys allege that CMG violated the TILA when it stopped sending required monthly loan statements after the Loewys went into bankruptcy. Summary judgment is warranted against the Loewys on this claim for the simple reason that the TILA's provisions do not apply once a borrower goes into bankruptcy. While a mortgage servicer is generally required to provide a borrower with a "periodic statement . . . for each billing cycle," a servicer becomes "exempt from the[se] requirements" if "any consumer on the mortgage loan is a debtor in bankruptcy." 12 CFR § 1026.41(a)(2); *Id.* § 1026.41(e)(5)(i)(A). CMG sent its last periodic statement to the Loewys on July 15, 2016. *See* SUF ¶ II.1. The Loewys filed for bankruptcy on August 11, 2016. *Id.* ¶ II.2. CMG therefore acted properly in halting periodic statements after July 2016.

The Loewys argue that even if CMG wasn't required to send periodic statements while they were in bankruptcy, it was required to begin sending statements again after the bankruptcy was discharged. But the language of the TILA forecloses this argument, too. Once a debtor emerges from bankruptcy, he or she must either "reaffirm personal liability for the loan [or] request in writing that the servicer provide a periodic statement."

12 CFR § 1026.41(e)(5)(ii). Plaintiffs have submitted no evidence that they either reaffirmed personal liability or requested in writing that CMG begin sending periodic statements once they emerged from bankruptcy. The Loewys' claim for violation of the TILA fails as a matter of law and CMG's motion for summary judgment as to this claim is **GRANTED.**

### 3. State Law Claims

In addition to the Loewys' two federal claims—which are dismissed for the reasons discussed above—CMG moves for summary judgment as to their two state law claims, negligence and violation of the Rosenthal Act. But without the federal claims, this Court must first decide whether to retain and rule on the state claims or to remand the claims to state court.

In choosing whether to exercise jurisdiction over pendent state law claims, a district court should "consider and weigh in each case, and at every stage of litigation, the values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of the factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (quoting Cohill, 484 U.S. at 351).

The Court concludes that remand is appropriate here. Both of the Loewys' state claims implicate important and rapidly evolving issues of law. With respect to their negligence claim, for example, there is an emerging split of authority as to whether a loan servicer owes borrowers a duty of care in processing loan modifications. *Compare Lueras v. BAC Home Loans Servicing*, LP, 221 Cal.App.4th 49, 67 (Cal. Ct. App. 2013) (California law "do[es] not support imposition of a common law duty to offer or approve a loan modification.") *with Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal.App.4th 941 (Cal. Ct. App. 2014) (mortgage lenders owe homeowners a duty to exercise reasonable care in the review of their loan modification applications once they agree to consider them). Courts are similarly split on whether residential mortgages are

considered "consumer debts" within the meaning of the Rosenthal Act. *Compare Sipe v. Countrywide Bank*, 2010 WL 2773253, at *17 (E.D. Cal. 2010) ("The only 'debt' CWB is allegedly attempting to collect is a residential mortgage loan, which is not a debt under the Rosenthal Act.") *with Lopez v. AM Solutions, LLC*, 2014 WL 1272773, at *3 (C.D. Cal. 2014) ("There is a difference between foreclosure-related activity and communications requesting payment of a debt in order to avoid foreclosure. . . . [T]he Rosenthal Act does not categorically bar all claims based on a debt collector's communications in connection with a debt secured by a residential mortgage loan."). California courts deserve the opportunity to answer and resolve these important questions of law, so comity dictates that the Court should decline supplemental jurisdiction and remand the claims to state court. This case is **REMANDED** to San Diego County Superior Court.

## CONCLUSION

For the reasons above, CMG's motion for summary judgment is **GRANTED** as to the Loewys' RESPA and TILA claims.[3] Because only state law claims remain and because comity points toward declining supplemental jurisdiction, this case is **REMANDED** to San Diego County Superior Court. The clerk is directed to enter judgment in favor of CMG on the Loewys' RESPA and TILA claims, to remand the remaining claims, and to close the case.

**IT IS SO ORDERED**.

Dated: May 10, 2019

**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge

---

[3] CMG has made various evidentiary objections to Arthur Loewys' declaration. This evidence is immaterial to the outcome here, so CMG's objections are **DENIED AS MOOT**. Dkt. 35 at 3-4.